<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CORVET CURLEY and ELAINE CURLEY,<br><br>       Plaintiff,<br><br> vs.<br><br>RONALD KLEM, a Police Officer,<br>SUED IN HIS INDIVIDUAL CAPACITY,<br>and JOHN DOE and BILL ROE two<br>currently unknown Police Officers<br>also sued in their individual<br>capacities,<br><br>       Defendants. | Civil Action No. 2:98CV05256 (KSH)<br><br><u>**OPINION**</u> |

**<u>KATHARINE S. HAYDEN, U.S.D.J.</u>**

 Plaintiff, a former Port Authority police officer, was the victim of a "friendly-fire" shooting by a State Trooper. He sued under the federal civil rights statute, 42 U.S.C. § 1983. After a jury trial, plaintiff was non-caused because the jury determined that the accidental shooting was "objectively reasonable." Plaintiff now argues to this Court that the jury's verdict must be set aside.

 The parties are fully familiar with the facts and issues, having addressed them throughout pretrial proceedings, which included extensive discovery, a ruling by this Court that granted

defendant summary judgment on the basis of qualified immunity, plaintiff's successful appeal of this ruling to the Third Circuit, which resulted in a published decision, and all the motions that preceded the trial on the merits, including significant motion practice on the issue of jury instructions and the Jury Verdict Sheet.

In this district, the published decision in Curley v. Klem and how the case proceeded to trial and verdict, have evolved contemporaneously with federal jurisprudence post-Saucier v. Katz, 533 U.S. 194 (2001).  The core legal issues surrounding whether a defendant in Klem's position is entitled to the protection of qualified immunity are identified, now, without considerable mental strain.   This is because the two-step inquiry set forth in Saucier v. Katz has become settled law in this Circuit as follows:

> First, we ask whether a reasonable jury could conclude that the victim's constitutional rights were violated by the defendant.  Second, we ask whether a reasonable officer in the defendant's position would have been aware that his conduct violated the victim's constitutional rights.  More specifically, the second question requires us to ask whether the right the defendant stands accused of violating was "clearly established" at the time of the incident in question.  If the answer to either question is no, then the defendant is entitled to summary judgment.

Estate of Robert Cecil Smith v. Marasco, 430 F.3d 140, 148 n.3 (3d Cir. 2005).

What prompts the mental strain is applying this inquiry to the facts of each case.  Here, the published decision that reversed this court's grant of summary judgment in defendant's favor, has become a point of contention between the parties, who held sharply divergent views on how the case should be tried, and now disagree on how the jury verdict must be construed.

This evolved as follows:  The published opinion quickly determined that the plaintiff had presented a constitutional violation by virtue of the mistaken shooting.  Then the published opinion identified two areas in the summary judgment record where predicate facts were in

dispute. Pointing out that this Court erroneously resolved those facts itself, instead of leaving them for the jury to decide, the court remanded for further proceedings.

Unspoken, but always present, was the possibility that qualified immunity would not shield the defendant from liability -- after all, there was a constitutional violation in that Officer Curley had a right not to be shot by Trooper Klem. Inherent in the published decision was the fact that his defense of qualified immunity would not shield the defendant from a trial. The issue was if the trial would be to the bench or before a jury. Albeit there is Third Circuit law on the books that indicates the trial judge, and not the jury, decides qualified immunity, for reasons not necessary to go into here, the litigants agreed to submit the ultimate question of qualified immunity to the jury.

It has been plaintiff's consistent position that if either of the two events the Circuit identified in the summary judgment record as being disputed was resolved against Trooper Klem, then Officer Curley would prevail on the issue of Trooper Klem's liability. These events were first, the inspection of the Camry driven by the perpetrator, about which there was record disagreement regarding what Trooper Klem did and where the body of the perpetrator was; and second, what happened during the confrontation when Trooper Klem shot Officer Curley, during which there was disagreement about whether Officer Curley raised and lowered his weapon and/or pointed it at Trooper Klem. This "alternate theory of liability" position was consistently disputed by defendant, who argued that the totality of the circumstances confronting Trooper Klem had to be considered in reaching a decision on qualified immunity.

Consistent with the Third Circuit's discussion that the factual record presented disputed predicate facts related to qualified immunity, the jury was presented with special interrogatories that asked it to resolve whether Trooper Klem looked into the Camry as he passed alongside of it

(the "inspection") and what information was available to him at the moment he shot Curley (the "confrontation").  Then the jury was asked three general liability questions.

As an initial basis for the motion, plaintiff argues there is an irreconcilable "disconnect" between the answers to some of the special interrogatories, and the jury's general verdict, which requires that the verdict be set aside.

This Court is persuaded that plaintiff's position wrongly conflates the Circuit's discussion of the Court's qualified immunity decision on summary judgment and the jury's task after a full exposition of the issues through trial.  Put another way, plaintiff has shrunk the issue of whether Trooper Klem's mistake in shooting Officer Curley is protected by qualified immunity down to a handful of seconds in the continuum of events.  But as the evidence showed, the critical events encompassed more than seconds, and more than the several minutes after Trooper Klem arrived at the staging area of the George Washington Bridge.  The trial evidence showed that critical events for the jury to weigh in reaching its decision had been ongoing for hours after the alert went out that the killer of a municipal policeman in Brick Township was fleeing north along New Jersey's major highways.  Albeit those seconds discussed by the Third Circuit are important, still they were singled out not because they were "the case," but because this Court erroneously saw them as unfolding only one way.  That the jury decided otherwise, that it viewed some of the pre-shooting events contrary to Trooper Klem's account, does not necessarily drive a determination that he acted unreasonably when he mistakenly shot Officer Curley.

As a consequence, this Court does not believe an irreconcilable tension exists between the jurors' answers to the Special Interrogatories and their responses on the General Liability verdict sheet. Questions 1 through 5 of the Special Interrogatories resolve the disputed record against Trooper Klem's version of the facts, by finding that the perpetrator's body was on the front seat

of the Camry, not the floor; that Klem did not look into the window of the Camry to see if the perpetrator was inside the car; that the perpetrator's body should have been visible to someone looking in the passenger side window from where Trooper Klem was positioned; and that Klem did not make "an objectively, resonable effort to observe into the Camry to determine if the perpetrator was inside the Camry."  In short, it appears that the jury determined that Klem did not look inside the Camry and had he looked inside the Camry he would have seen the body inside it. That resolves one of the predicate issues that was disputed in the summary judgment record.  But it does not resolve the *import* of the issue, contrary to plaintiff's position.

The jury answered 3 out of 5 of the remaining Special Interrogatories that address events after the Camry inspection.  First, the jury found that it was objectively reasonable for Klem to believe that the toll collector signaled to him with an arm motion towards the east side center of the toll plaza, which was where Curley was situated.  The jury did not find that Curley raised his gun to point directly at Klem during the confrontation that led to the shooting, and the jury did not find that Curley's gun was coming up to aim at Klem at the time Curley was shot.

The jury was not able to reach unanimity on the remaining questions posed in the Special Interrogatories:  whether Curley's police officer's uniform was visible to Klem, and whether it was objectively reasonable for Klem to believe that the individual he observed holding a weapon was wearing civilian clothing.

In giving those responses, the jurors resolved a disagreement in the record about how Officer Curley was handling his weapon, apparently contrary to Trooper Klem's (and other witnesses') testimony.  One jury response concerns the testimony given by the toll collector, which was commented on in the published decision as evidence that this Court overlooked.  The jurors' finding appears to support Trooper Klem's testimony.  The jurors failed to reach

agreement on the visibility of Officer Curley's uniform, which was something in dispute throughout the trial. Unlike the findings clustered around the Camry inspection issue, it is much harder to "read" into these answers a clear resolution of the confrontation issue other than to conclude that the jurors did not find that Officer Curley invited the shooting by the way he handled his weapon.

In the Liability Verdict Sheet, the jury answered three liability questions as follows:

Yes to Question 1: Did Trooper Ron Klem's failure to act in an objectively reasonable manner in observing the Camry prevent him from seeing the perpetrator's body in the Camry? This answer is consistent with the factual findings in the Special Interrogatories.

Yes to Question 2: Did Trooper Ron Klem act in an objectively reasonable manner in shooting Officer Curley during the confrontation? This answer too is consistent with the findings on the confrontation conduct of Curley. Based on the finding that Klem reasonably responded to the signal towards Curley made by a toll collector on the scene, the lack of unanimity on the visibility of Curley's police uniform, and the other testimony given by Curley and by Klem and by other law enforcement officials present at the scene concerning the events at the plaza, the fact that Curley was not found to have raised his gun to point at Klem does not require a decision that Klem acted unreasonably in shooting Curley during the confrontation.

Consistent with the directions given to the jury on the Verdict Sheet, because the answer to Question 1 was Yes, the jury moved on to Question 3, which asked: Was Trooper Ron Klem's mistake in firing his weapon objectively reasonable? In answering Yes, the jurors resolved the issue of objective reasonableness inherent in this lawsuit.

As indicated, plaintiff seeks a directed verdict on the theory that all of the fact-finding in the Special Interrogatories resolved in his favor the "outcome-determinative facts" listed in the

published opinion. As such, plaintiff argues, the jurors' answer to Question 3 must be over-ridden. (Plaintiff's Moving Brief at 16.) According to plaintiff the answer to Question 3 "is totally unsupported by the found facts as well as unsupported by the facts designated as outcome-determinative on the Inspection of the Camry issue by the Third Circuit." (Pl.'s Br. at 17.)

Plaintiff further argues that Question 3 never should have been presented. He claims that the question is there "ostensibly to cover the qualified immunity exoneration a police officer can receive for a 'mistake' even in the face of a possible constitutional violation." (Pl.'s Br. at 20.) But he argues that "mistake" has special jurisprudential meaning and should not have been presented to the jury. (Pl.'s Br. at 23.) From this, it appears that plaintiff is going back to a point decided early on, that the jury would decide the issue of qualified immunity, and not the Court. The Court's recollection is that both sides agreed that the jury would decide that issue.

But this attack on the legitimacy of Question 3 also resurrects the primal and recurring dispute between the parties about the meaning of the published opinion on summary judgment. Plaintiff is again raising his position that the Third Circuit identified two theories of liability, each distinct from the other, and if plaintiff prevailed on either one of them, he prevailed on liability. This Court believes that plaintiff misconstrues the published opinion, and agrees with defendant where he argues in his Opposition brief:

> ...Plaintiff would have this Court create a special, unwarranted rule for the case where a mistaken use of excessive force is directed against another police officer. He would have this Court focus on one fact, make it outcome determinative, and combine the two steps of Saucier's qualified immunity analysis into a single question of reasonableness. Such a view would gut the Supreme Court's careful parsing of the Section 1983 question into two pieces: constitutional violation and qualified immunity. The case law simply does not support this analytical collapse.
> The Third Circuit stated: "had Klem known of Bailey's suicide, it would have been clearly unreasonable for him later to confuse Curley with the suspect." 298 F.3d at 271. However, this is not the situation which the jury found. The jury never decided that Klem looked into the Camry, saw Bailey's dead body and

>nonetheless shot Curley. This is critical. It means that, after answering questions about the Camry, the jury's task was not complete. It needed to decide whether, having not looked into the Camry (reasonably or unreasonably), it was nonetheless reasonable for Klem to have shot Curley. Additionally, the jury was tasked to decide whether Klem made a reasonable mistake in shooting Curley. Granted, this second question of the two-step analysis makes a bit more logical sense (in sequence) if the jury had decided that it was not reasonable to have shot Curley, but, having been specifically asked whether there was a reasonable mistake, a question flowing directly from Supreme Court and Third Circuit qualified immunity jurisprudence, they answered that there had been.

(Opp'n at 17 - 18.)

This Court does not find that the published decision remanding this case for further proceedings limited the triable events to how/whether Trooper Klem inspected the Camry, or how/whether Officer Curley moved his weapon during the parties' confrontation. The case presented by the parties before this Court and a jury was about "friendly fire" and its consequences. Many people testified, and they told the jury about events well outside Klem's inspection of the Camry and Curley's handling of his weapon, testimony that was for the most part not challenged as improper or irrelevant to the issue the jury had to decide: whether Officer Curley's constitutional rights were violated because Trooper Klem acted in an objectively unreasonable manner in shooting Officer Curley. As such, the jury was free to make its decision based on the totality of the evidence.

Constrained by the factual discussion in the published opinion, the parties and this Court submitted to the jury the issues identified in the opinion for its factfinding. As indicated above, the Court does not find that the Special Interrogatories nullify the answers to the General Liability Questions. Consistent with the published opinion the jury was asked about its findings on the Camry inspection and the confrontation episodes, but its answers do not offer plaintiff an "either/or" scenario for victory. Question 3 properly asks the jurors to make the finding that is

inherent in the remand, and in answering it as they did, unanimously, this jury decided the issue of qualified immunity in Trooper Klem's favor.

Based upon the foregoing, plaintiff's motion for judgment as a matter of law and/or a new trial is denied.

Plaintiff's challenge under Batson v. Kentucky, 476 U.S. 79 (1986), consists of two paragraphs, no legal authority beyond the word "Batson," and no citations to the record. He demands a new trial because defendant's attorney made a peremptory challenge to an African-American woman. The Court recalls that plaintiff objected at the time of the strike. At the time, he offered no evidence of discriminatory intent, and was not entitled to inquire as to counsel's reasons. The juror that prompted plaintiff's sidebar challenge was Postmaster in the Pine Brook postal facility. Plaintiff now argues pretext in his brief because later on, his adversary did not strike a retired postal employee. This suggestion that the second decision created a *prima facie* showing puts the cart before the horse. When he made the challenge at trial, plaintiff offered no evidence of circumstances or a pattern of strikes that could support an inference of discriminatory intent.

Albeit defendant was not required to offer an explanation of why he struck the juror, the Court was satisfied at the time that what counsel offered at sidebar provided a race-neutral justification. Plaintiff does not articulate why the justification was not race-neutral, and defendant indicates in his brief that there was background information about the juror giving further reasons beyond what he articulated at sidebar. That defendant did not strike, later on, a retired postal employee who had other background factors viewed as favorable, is not a circumstance standing alone or in context with the other juror selection decisions made by defendant, that establishes discriminatory intent in the earlier decision to strike the Postmaster.

The broadside, sweeping statement in plaintiff's brief -- that "there was no cognizable reason for challenging her except a desire to keep as many African-Americans off the jury in a case where the elephant in the room was the shooting of an African-American police officer, in uniform, by a white State Police Officer based on the minimal description of 'tall black male'" -- is inflammatory and unfounded.   The Court denies the motion for a new trial on <u>Batson</u> grounds.

     Plaintiff's motion for a directed verdict and a new trial is denied.  An appropriate order will be entered.

                                                                      <u>s/Katharine S. Hayden</u>
                                                                      Katharine S. Hayden, U.S.D.J.

Dated: February 21, 2006